UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| DAVE LUNZMAN,<br>Plaintiff,<br>vs.<br>BROWN COUNTY, SD; DUANE SUTTON; MIKE GAGE; DREW DENNERT; DOUG FJELDHEIM; KYLER DINGER; KARLY WINTER-GOODWIN; ALLISON TUNHEIM; CITY OF ABERDEEN, SD; ABERDEEN POLICE DEPARTMENT; and DAVID MCNEIL; in their official and individual capacities,<br>Defendants. | **1:25-CV-01017-CCT**<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |

Defendants City of Aberdeen, SD, Aberdeen Police Department, and David McNeil ("City Defendants") filed a motion to dismiss Plaintiff Dave Lunzman's complaint for failure to state a claim and for insufficient service of process on the City of Aberdeen and Aberdeen Police Department and request the Court decline to exercise supplemental jurisdiction over the state law claims. Docket 10. Defendants Brown County, Duane Sutton, Mike Gage, Drew Dennert, Doug Fjeldheim, Kyler Dinger, Karly Winter-Goodwin, and Allison Tunheim ("County Defendants") filed a motion to dismiss Lunzman's complaint for failure to state a claim and immunity privileges and urge the Court to decline to exercise supplemental jurisdiction. Docket 13. Lunzman opposes the motions, Docket 19. He also filed a document claiming a conflict of interest with defense counsel. Docket 24-1. Defense counsel responded. Docket 25.

## PROCEDURAL BACKGROUND

Lunzman filed his complaint on November 6, 2025, alleging claims of retaliation, violation of procedural due process, violation of equal protection, disability discrimination, workman's compensation retaliation, hostile work environment and retaliation, Monell liability, invasion of privacy, defamation, intentional interference with official duties, intentional infliction of emotional distress, violation of open meeting laws, wrongful termination, constructive discharge, conspiracy to deprive rights, and retaliation and negligent supervision. Docket 1 at 18-29. The City Defendants filed their motion to dismiss on December 4, 2025. Docket 10. The County Defendants filed their motion to dismiss on December 9, 2025. Docket 13.

## FACTUAL BACKGROUND

The facts, as stated in Lunzman's complaint, Docket 1, are as follows.

In August 1990, Lunzman began his career in law enforcement with the Aberdeen Police Department. Docket 1 at 5. From February 2000 to June 2016, Lunzman worked for the State of South Dakota as a Special Agent with the Division of Criminal Investigation. *Id.* at 5-6. In June 2016, he transferred within the state employment system to the position of Special Assistant to the Attorney General's Office investigating elder abuse. *Id.* at 6. In November 2018, Lunzman began employment with the Brown County Sheriff's Office, serving as the chief deputy to the sheriff. *Id.* As a part of his duties, Lunzman directly supervised the sheriff's office and deputies when the sheriff was absent. *Id.*

In 2022, as part of his duties as chief deputy to the sheriff, Lunzman spoke with Monica Hein, the Brown County jail nurse, "regarding the schedule, duties, and goal to only work Monday-Friday during the day and answer after hours calls without drawing blood after hours to lighten her workload." *Id.*

In September of 2022 and March of 2023, Lunzman spoke with the Brown County State's Attorney's Office about the possibility of losing the blood technician program provided by the jail. *Id.* He "[d]iscussed [the] program and requirements according to SDCL 32-23-14, and if there was a conflict of interest with" his wife, Mary Jane Lunzman,[1] "filling in until other individuals could be hired." *Id.* "No conflict of interest was determined." *Id.* Lunzman "decided to wait to see if other options could be found." *Id.*

On January 1, 2023, Lunzman began his term as the Brown County Sheriff. *Id.* In February and March of 2023, he "[c]ontacted Vitalant looking for possible help with blood techs." *Id.* In July of 2023, he hired Sam Mounga to serve as the jail administrator. *Id.* Mary Jane Lunzman would report directly to Mounga. *Id.*

---

[1] Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the fact that Lunzman is married to Mary Jane Lunzman. The Court also notes that Mary Jane Lunzman brought her own lawsuit asserting some similar claims against some of the same defendants named in this lawsuit. *See Lunzman v. Brown County, SD, et al.*, 25-CV-1008. Her lawsuit is now resolved pursuant to this Court's order denying motion for leave to file amended complaint and granting defendants' motion to dismiss. *Id.* at Docket 26.

To avoid confusion in this case, Mary Jane Lunzman's full name will be used when she is referenced. Defendant will continue to be referenced as "Lunzman."

On September 3, 2023, Mary Jane Lunzman "was called to the Brown County Jail to perform [a] requested blood draw on a DUI arrestee[.]" *Id.* While she was finishing the paperwork for that blood draw, another officer came into the Brown County Jail and requested that blood be drawn from "a very loud, threatening, combative, uncooperative DUI arrestee[.]" *Id.*

On September 28, 2023, Jessica Johnson (Brown County human resources), Hein (jail nurse), Mounga (jail administrator), Allison Tunheim (Brown County Human Resources Director),[2] and Karly Winter-Goodwin (Brown County State's Attorney)[3] had a meeting with Mary Jane Lunzman. *Id.* During the meeting, Mary Jane Lunzman was advised that on September 3, 2023, she had "violated warrant protocol" and the Aberdeen police officers that had requested the blood draws "indicated on Police Report . . . observations that [Mary Jane Lunzman] appeared impaired[.]" *Id.* Lunzman was not contacted about this meeting, although Mounga did stop by Lunzman's office afterward and told him that "he just attended [a] meeting in the HR Office regarding [Mary Jane Lunzman] and it was a 'shit show.'" *Id.*

After the meeting, Winter-Goodwin asked Mounga and Hein to create a blood draw policy. *Id.* Hein refused, but Mary Jane Lunzman "was willing to research to provide policy proposals regarding blood draws and warrant procedures." *Id.* Although Luznman oversaw blood draws, he was not informed of any policy deficiency or policy change request. *Id.*

---

[2] Allison Tunheim is a named defendant in this case.

[3] Karly Winter-Goodwin is a named defendant in this case.

On October 2, 2023, without informing Lunzman, Hein went to Tunheim and Winter-Goodwin accusing Mary Jane Lunzman of "implementing documents and scheduling Blood Techs without informing [Lunzman]." *Id.* This led to accusations of Brown County policy violations being brought before the Brown County Commission. *Id.*

On October 10, 2023, Lunzman was called to an executive session with the Brown County Commissioners[4] where the commissioners "accus[ed] [Mary Jane Lunzman] of creating Blood Tech monthly schedule and implementing documents for Blood Techs." *Id.* at 7. Lunzman informed the commissioners that they were incorrect, as he and Mounga "were implementing documents for administrative purposes." *Id.*

On October 16, 2023, Winter-Goodwin met with Lunzman about an issue involving Mary Jane Lunzman and text messages sent to a friend. *Id.* Winter-Goodwin advised Lunzman that "she believed there was not anything there." *Id.*

On November 3, 2023, Lunzman followed up with Winter-Goodwin in passing, while Mary Jane Lunzman was present, and Winter-Goodwin told them that Aberdeen Police Chief Dave McNeil[5] "wanted [the Division of Criminal Investigation] to investigate" the incidents "which were already closed." *Id.* Winter-Goodwin said "there was no reason [Mary Jane Lunzman] could not draw blood for the weekend as there was nothing there; that [Mary Jane

---

[4] Brown County Commissioners Duane Sutton, Mike Gage, Drew Dennert, Doug Fjeldheim, and Kyler Dinger are named defendants in this case.

[5] Aberdeen Police Chief David McNeil is a named defendant in this case.

Lunzman] was just being a mom and has a big heart." *Id.* Based on that, Lunzman and Mary Jane Lunzman "understood the issues were closed." *Id.*

From November 3, 2023 to November 5, 2023, Mary Jane Lunzman was on call for blood draws but did not receive any requests over the weekend. *Id.* On November 4, 2023, Lunzman stopped at the Brown County Sheriff's Office and jail and was told that the officers on duty had asked the jail staff who was on call for blood draws, and if Mary Jane Lunzman was on call, the officers "were to take DUI arrestees to [the] hospital for blood draws." *Id.*

In response, Lunzman called the Aberdeen Police Department Captain to ask "about [Mary Jane Lunzman] being singled out for not allowing her to perform [Aberdeen Police Department] blood draws." *Id.* The Captain stated he did not know the details. *Id.* Lunzman also called the 911 Director, asking if he or dispatch "knew about the [Aberdeen Police Department] no[t] allowing [Mary Jane Lunzman] to perform [Aberdeen Police Department] blood draws." *Id.* The 911 Director had not heard anything. *Id.* Lunzman then "issued a directive to dispatchers that since the [Aberdeen Police Department] Officers are currently taking Blood Draws to the Hospital when [Mary Jane Lunzman] is on call, they can take all their blood draws to the hospital no matter who is on call for [the Brown County Sheriff's Office]." *Id.*

On November 6, 2023, Lunzman received an e-mail from Winter-Goodwin setting up a meeting with the city attorney, Chief McNeil, Brown County Commissioner Duane Sutton, and Lunzman regarding the new blood draw policy. *Id.* Winter-Goodwin also advised Lunzman that she had "decided to re-

open the 09-03-23 blood draw incident and text issue to have [an] independent investigator evaluate the incident[,]" even though Winter-Goodwin had said "there were no complaints" and Lunzman had been informed "the issues were resolved over a week prior." *Id.*

On November 8, 2023, Lunzman received correspondence from Chief McNeil about "wanting blood draws back." *Id.* at 7-8. The letter also discussed "possible legal issues that [] Chief McNeil will not communicate to [Lunzman]." *Id.* at 8. On November 13, 2023, Lunzman responded to Chief McNeil that "there's more to consider than to just give back blood draws." *Id.*

On November 14, 2023, Winter-Goodwin notified Lunzman that she had hired Reed[6] Rasmussen to complete the investigation which was authorized by the Brown County Commission. *Id.* When Rasmussen contacted Lunzman to set up an interview for the investigation, Lunzman asked for a copy of the complaint. *Id.* Rasmussen informed him there was no complaint. *Id.* Lunzman indicated he would not participate in an interview until a complaint was obtained. *Id.*

On December 1, 2023, Rasmussen contacted Mary Jane Lunzman to line up an interview on December 5, 2023, but after she and Lunzman consulted with an attorney, the interview was postponed. *Id.* On December 4, 2023, Lunzman received a Freedom of Information Act (FOIA) request from a reporter with Dakota Scout Newspaper referencing an article to be published later that

[6] While Lunzman did not provide Investigator Rasmussen's first name, it was referenced in Aberdeen Defendants' Memorandum of Law in Support of Motion to Dismiss. Docket 11 at 4.

day "about [Mary Jane Lunzman] performing warrantless blood draws." *Id.* The news article published was titled, "WIFE OF BROWN COUNTY SHERIFF AT CENTER OF INVESTIGATION STEMMING FROM JAIL BLOOD DRAWS." *Id.* Lunzman claims the article led "to [a] series of continuous negative, derogatory, harassing and retaliatory, articles about [Lunzman and Mary Jane Lunzman], during the internal investigation." *Id.*

In January 2024, Hein made allegations against Mary Jane Lunzman to Winter-Goodwin and Tunheim. *Id.* at 8-9. Lunzman felt that he should have been the person to handle any such issues, as Hein was under his supervision, but Winter-Goodwin and Tunheim did "not comply." *Id.* at 8. Lunzman thought that Tunheim, Winter-Goodwin, and the Brown County Commission failed to "address the issues according to [Brown County's] own policies and procedures they created" and that the reported issues were not within the purview of Winter-Goodwin, Tunheim, or the Brown County Commission, "per statute and [Brown County] Policy and Procedure." *Id.* at 8-9.

Lunzman corresponded with Hein on January 9, 2024, "regarding Directives addressing issues Hein has problems with" and stated that the "Directives were administrative in nature and not of her concern." *Id.* at 8. Hein said that when Mounga and Wilson[7] tried to find out why Hein made allegations against Mary Jane Lunzman, Winter-Goodwin told her she "did not have to list reasons for allegations." *Id.* at 9. According to Lunzman, "[t]his

[7] It is not clear from Lunzman's complaint who Wilson is, or what position he or she holds.

would be outside [Winter-Goodwin's] authority provided by South Dakota Law and by Brown County Policy." *Id.*

On January 12, 2024, Winter-Goodwin and Commissioner Sutton met with Lunzman and discussed a number of issues. *Id.* Winter-Goodwin indicated that Mary Jane Lunzman "was authorized to continue to volunteer as there is no conflict for Brown County and [the] Jail." *Id.* Winter-Goodwin "allowed [Lunzman] to briefly view a portion of the 09-03-23 [Aberdeen Police Department] Police reports regarding Officers observations and text messages." *Id.* Winter-Goodwin again stated that "while there were no complaints, . . . [she] was having both the 09-03-23 incident and the text message incident investigated by an outside party[.]" *Id.* According to Lunzman, Winter-Goodwin also "misrepresent[ed] SDCL 24-11-13 and SDCL 24-11-23 and stated [the Brown County Commissioners] have oversight of the (5) Medical, (10) Training and (11) welfare of inmates (coincidentally the only areas that involve [Mary Jane Lunzman])." *Id.* Commissioner Sutton told Lunzman that the Brown County Commissioners were "taking over Supervision of Hein." *Id.* Lunzman said since that was "going to happen, [the Brown County Commissioners] need to take over all medical, including medication passes, hiring and firing of medication aides, medication errors that Hein admitted doing and will have to address discipline issues; as well as address all the issues in the Jail surrounding Hein that [Lunzman was] currently trying to resolve." *Id.* Lunzman also said "that if Hein continues to treat the Correctional Officers poorly as

Hein has been doing, [Lunzman] will kick Hein out of the Jail." *Id.* After that, Hein went to the Brown County Commissioners. *Id.*

Then, on January 30, 2024, the Brown County Commission met with Lunzman in an executive meeting and "informed Lunzman [that Mary Jane Lunzman] is the problem and is banned from volunteering for the Sheriff's Office, fired/banned from Sheriff's Office/Jail Blood Draws." *Id.* The commissioners ordered Lunzman to re-instate blood draws and informed him that supervision of the nurse will remain under his authority. *Id.* They also told him they "were taking over control of FOB and key access to the Jail and the Annex, as well as the control of Court Security." *Id.*

According to Lunzman, he was not given any legal or procedural notice regarding any complaints against Mary Jane Lunzman, and the Brown County Commissioners "did not afford [Mary Jane Lunzman] or Lunzman a fair opportunity to review and/or defend against any allegations." *Id.* Lunzman believed that "[t]erminating [Mary Jane Lunzman] and taking over FOB oversite is an over-reach and not part of [Brown County Commission's] authority and goes against South Dakota Statute, Current Court Order and South Dakota Attorney General's Opinion." *Id.*

In February of 2024, Lunzman continued to have problems with Hein. *Id.* at 10-11. On more than one occasion, Lunzman observed Hein talking to Winter-Goodwin, who failed to refer Hein back to Lunzman, "thus causing Chain of Command disruptions regarding day-to-day operations in [the] Sheriff's Office[.]" *Id.* at 10. Winter-Goodwin failed to "send Hein back to

Lunzman a second time later in February. *Id.* According to Lunzman, this failure "violat[ed] Brown County Sheriff's Policy and State Statute." *Id.*

On February 6, 2024, Lunzman told the Brown County Commissioners that "according to SDCL 24-11-13, the Sheriff has control of Jail and according to the 5th Judicial Ruling and Attorney General's Ruling, the Sheriff is in charge of providing security to the court house," so the commissioners "will not be taking over FOB and key access to [the] Jail nor control of Court Security." *Id.* He also told the commissioners that "blood draws will not be reinstated due to [Brown County Commissioners and Chief McNeil] firing [Mary Jane Lunzman] causing lack of personnel to perform blood draws, creating safety concerns[.]" *Id.*

On February 23, 2024, Lunzman learned from Mounga that there was some sort of disciplinary meeting with Hein. *Id.* Lunzman directed Mounga to call the "part-time nurse to make sure she was still scheduled for on-call nurse calls for the weekend[.]" *Id.* She confirmed she was. *Id.* But then, an hour later, the part-time nurse called Mounga and quit. *Id.* Lunzman then contacted Winter-Goodwin who consulted with Tunheim. *Id.* Lunzman ended up "making calls to find a temporary nurse to fill in for Hein so [the Brown County] Jail can legally pass meds in the jail." *Id.* at 11. He was able to successfully hire new nurses and contacted Mounga "to tour the jail with the new nurse to get familiar with everything at the jail." *Id.* at 11.

Lunzman also continued to have issues with the Aberdeen Police Department when some officers refused to assist on two 24/7 dispatched calls.

*Id.* at 10. On February 9, 2024, Lunzman contacted Chief McNeil to discuss the 24/7 calls and Chief McNeil's "lack of communication, regarding [Mary Jane Lunzman's] incident with his officers on 09-03-23 and refusal of taking any responsibility for his Officers actions." *Id.* Chief McNeil and his captains told Lunzman that regarding the 24/7 calls, "the Officers were not officially dispatched, therefore did nothing wrong." *Id.*

On March 1, 2024, Lunzman again observed Hein talking with Tunheim and Winter-Goodwin. *Id.* at 11. That same day, Winter-Goodwin and Tunheim met with Lunzman "to explain the guidelines that surround the termination of someone at, near, on or shortly after taking leave." *Id.*

On March 15, 2024, Lunzman and Mary Jane Lunzman were separately interviewed by investigator Reed Rasmussen. *Id.* During his interview, Lunzman discussed "the lack of communication by [Winter-Goodwin, Tunheim, Brown County Commissioners, and Chief McNeil] provided to [Lunzman] when there is an incident." *Id.* On April 3, 2024, Lunzman sent an e-mail to Winter-Goodwin asking about the results of the investigation and was advised that the results had been provided to the Brown County Commission. *Id.* Lunzman requested a copy of Rasmussen's internal investigation and was told the Brown County Commission would review the results at the April 16, 2024 meeting. *Id.*

On April 9, 2024, a human resources report to the Brown County Commission indicated that Mary Jane Lunzman "was transferred from Blood Tech to Detention Officer to be approved by commission on 04-16-24, submitted by [Tunheim] without [Lunzman's] knowledge or approval." *Id.*

On April 16, 2024, Mary Jane Lunzman was transferred to the position of detention officer, a decision that was not cleared by Lunzman. *Id.* Also on that date, Lunzman was advised by a newspaper reporter that "[Mary Jane Lunzman] and the [Brown County] Sheriff's Office had been cleared of all wrongdoing[.]" *Id.* at 11-12. Lunzman "had no idea the Sheriff's Office was under investigation nor had [he] been given notice of the investigation results[.]" *Id.* at 12. He asked Commissioner Sutton whether a public announcement regarding the results of the investigation would be made, and Commissioner Sutton advised that the commission had decided not to release the results of the investigation to anyone. *Id.* According to Lunzman, that is a violation of the Brown County Policy Manual. *Id.*

On April 17, 2024, "[a] news article was published with the headlines, 'BROWN COUNTY SHERIFF'S WIFE AT CENTER OF INVESTIGATION AGAIN WORKING AT JAIL.'" *Id.* Lunzman asserts that this internal investigation should never have been released to the press, and no one, including the Brown County Commissioners, Winter-Goodwin, or Chief McNeil, conducted an investigation to find out who leaked this confidential personnel information. *Id.* Lunzman "asked to investigate the leaks," but has not been "provided [the] results of any investigation to date." *Id.*

On April 23, 2024, Mary Jane Lunzman spoke to the Brown County Commission in open session "requesting an investigation into the leaks and accountability" from Chief McNeil, as well as a raise for employees performing extra training duties. *Id.* The request for employee raises was denied by the

commission. *Id.* On that same date, another news article was published with the headline, "SHERIFFS WIFE ACCUSES COMMISSION OF LEAKING INVESTIGATION INFORMATION." *Id.* Lunzman claims that to date, the leaks have not been investigated. *Id.*

On April 24, 2024, Chief McNeil told Lunzman that Mary Jane Lunzman "was incorrect" when she addressed the Brown County Commission on April 23, 2024, and he "demanded" that Mary Jane Lunzman be either disciplined or fired. *Id.* In an email, Chief McNeil blamed Mary Jane Lunzman "for ALL discord between [the] Sheriff's Office and Aberdeen Police Department." *Id.* But according to Lunzman, that discord has existed on and off since he started with the Aberdeen Police Department in 1990. *Id.* at 12-13.

Chief McNeil agreed to provide Lunzman and Mary Jane Lunzman with video footage from the September 9, 2023 incident. *Id.* at 12. He provided some footage, approximately 27 minutes of a 40-minute video. *Id.* Chief McNeil "demanded [Lunzman] apologize and publicly correct the record[,]" and if Lunzman did not "follow his demands after watching the video, he would go public during the next [Brown County] Commission meeting and correct it himself." *Id.* However, Lunzman thought Chief McNeil "did not derive accurate information from 04-23-24 [Brown County] Commission meeting," and he did not "effectively recite any inaccuracies to determine if corrections to the record was needed." *Id.*

On April 26, 2024, Mary Jane Lunzman fell at work and was injured. *Id.* at 13.

On April 30, 2024, at a Brown County Commission meeting, Chief McNeil and some of his colleagues talked to the commission about the warrant process. *Id.* Lunzman did not think the information provided was correct and accurately explained. *Id.* Chief McNeil then "issue[d] a list of directives for [Lunzman] to implement, and disregard[ed] [Mary Jane Lunzman's] credentials and qualifications[.]" *Id.* Chief McNeil said that Lunzman "should not hire his wife [] in any capacity," which Lunzman felt publicly harassed and defamed both Mary Jane Lunzman and himself. *Id.*

In mid-May 2024, Lunzman learned that the Brown County Commissioners had spoken to 911 users and talked to the director of that program "about separating 911 Dispatch away from [Lunzman's] direct supervision without [Lunzman's] knowledge." *Id.* When Lunzman asked to attend a meeting about this, he was told the meeting was "about [him]." *Id.* According to Lunzman, the meeting was not about him, and he "should have attended the meeting as the supervisor and a 911 Stakeholder." *Id.* He felt that the Brown County Commissioner "blatantly went out of their way to talk to other 911 users to undercut [Lunzman's] authority as 911 Supervisor." *Id.*

In June 2024, Mary Jane Lunzman's injury progressed and she requested work accommodations. *Id.* Lunzman consulted with Tunheim and provided accommodations until Mary Jane Lunzman's doctor removed her from all work activities on August 7, 2024, in anticipation of her pending surgery on August 19, 2024. *Id.*

In July of 2024, Hein made a verbal complaint against Lunzman and Mary Jane Lunzman. *Id.* Lunzman informed Tunheim that he was "working with County Employment Attorney Lisa Marso regarding Hein's work performance and conduct concerns and planned to speak with Hein the previous week but did not want to around a holiday." *Id.*

Lunzman identifies a number of things that happened on July 9, 2024. First, there was a "pre-termination" hearing for Hein, where she "accused [Mary Jane Lunzman] of teaching recruit's [sic] improper procedures under Hein's license." *Id.* "Hein was ultimately terminated." *Id.* Also, Tunheim received a worker's compensation letter from Mary Jane Lunzman's advocate, stating accommodations were needed for her to work at home. *Id.* Finally, a FOIA request was sent to Winter-Goodwin requesting information about Mary Jane Lunzman's employment status, wages, and position at the Sheriff's Office. *Id.* at 13. Winter-Goodwin advised that Tunheim had "already provided most of the information via phone." *Id.* at 14.

On July 12, 2024, after the FOIA request, two news articles were published: (1) "BC SHERIFF GIVES WIFE NEW JOB AS WORK FROM HOME JAIL DENTENTION OFFICER" with a subheading of "SCANDAL PLAGUED SPOUSE WORKING REMOTELY FOR HER HUSBAND, COUNTY'S TOP COP"; and (2) "SHERIFF'S WIFE NOW WORKING FROM HOME, SERVICES OFFERED TO COUNTY FOR FREE, HE SAYS." *Id.*

On July 29, 2024, Hein's internal complaint was investigated by Carpenter.[8] *Id.* The results of the investigation were provided verbally at the commission meeting on July 30, 2024. *Id.* The results were also provided verbally to Lunzman by Tunheim, which Lunzman believed violated Brown County policy. *Id.* The results "cleared [Lunzman] and [Mary Jane Lunzman] of any wrongdoing." *Id.*

On October 8, 2024, Commissioner Sutton advised Lunzman that he would not be receiving a raise for 2025 "because [Lunzman] made one bad decision hiring [Mary Jane Lunzman,]" and according to Winter-Goodwin, the Brown County Commission had authority to oversee training at the jail. *Id.* The commission wanted to see the training policy and curriculum Mary Jane Lunzman had been working on until she was banned from volunteering on January 30, 2024. *Id.* Lunzman disagreed with Commissioner Sutton's position because "[a]ccording to SDCL 24-11-13, training is a function of the Sheriff." *Id.*

On November 12, 2024, during a public commission meeting, the commission confirmed Lunzman "would not receive a raise to show their [ ] displeasure for hiring [Mary Jane Lunzman] as [she] is the problem." *Id.* They also gave him an ultimatum that Mary Jane Lunzman "quit or be fired" which was "tied directly to reconsideration of [Lunzman's] raise." *Id.* According to Lunzman, the commission did not "produce any documents regarding such

---

[8] Although Lunzman identifies Carpenter as an investigator, he does not include this person's first name or other identifying information.

complaints or concerns." *Id.* Lunzman informed the commission that he "would no longer provide Coroner services without proper compensation." *Id.* During the meeting, Commissioner Fjeldheim "publicly shared [Mary Jane Lunzman's] protected disability status" while questioning Lunzman. *Id.*

On November 14, 2024, Lunzman officially asked the commission for compensation for his work as the coroner, as he had not received any compensation for that work for two years. *Id.* at 15. When the commission did not respond, Lunzman informed it he would not be seeking another term as coroner. *Id.* On December 2, 2024, Sutton advised Lunzman that the commission could provide a salary to the sheriff as coroner, but the chief deputy cannot be paid a salary as deputy coroner. *Id.* Commissioner Sutton did not offer Lunzman compensation for his coroner work. *Id.* Lunzman continued to request compensation for the coroner position and repair the relationship between the commission and the sheriff's office. *Id.*

On December 27, 2024, Commissioner Sutton advised Lunzman that Brian Koens was going to serve as coroner. *Id.* Lunzman was not consulted for advice about setting up the new coroner, although he had "a vast amount of training and practical experience with 20+ years death investigations for Coroner position." *Id.* Koens, as the new coroner, was paid essentially what Lunzman asked that he be paid to continue his duties as coroner. *Id.*

Also on December 27, 2024, Chief McNeil asked Lunzman if he could use the jail nurse to draw blood immediately because a combative individual spit on an Aberdeen police officer. *Id.* Lunzman expressed concern about the time

frame for the request and the safety of the parties due to the individual not having time to calm down. *Id.* The individual's combative behavior escalated, and eventually, the individual had to be transported to the hospital for the blood draw. *Id.* Lunzman and Chief McNeil exchanged e-mails, each expressing how they saw the situation with the blood draw request and disagreeing with the other's perspective. *Id.* at 16.

On January 3, 2025, Chief McNeil stopped by Lunzman's office "to discuss last e-mail sent and communication for 09-03-23 and 11-03-23 through 11-05-23." *Id.* Chief McNeil said that Mary Jane Lunzman "could complete the lesson plans for the jail training program, but his officers need to teach courses." *Id.* Lunzman saw that as an overreach of Chief McNeil's authority. *Id.*

In late January 2025, the Brown County Commission considered the Impress Fund, which compensates employees for meals, gas, and meals for inmates on transfer trips. *Id.* According to Lunzman, the Impress Fund has "been in place for 30+ years with no issues." *Id.* At the commission's January 28, 2025 meeting, it "decided to take the Impress Fund away from the Sheriff's Office." *Id.* Lunzman requested clarification from the commission on expectations after the Impress Fund was taken away. *Id.* In this same email, Lunzman asked "if the front office staff could take over the inmate medical bill portion of Welfare, without added budget request, as it would streamline and speed up the current process for staff." *Id.* The commission rejected the suggestion and decided that "all Welfare duties would go to the Auditor[.]" *Id.*

Lunzman felt this provided a less direct route for the paperwork and slowed the repayment process. *Id.*

On March 4, 2025, Lunzman informed Tunheim that the commission minutes from the December 31, 2024 meeting incorrectly stated he had resigned from the coroner position, when he had actually completed the term as agreed. *Id.* at 16-17. The minutes were not revised to reflect this information. *Id.* at 17.

On May 4, 2025, Lunzman was contacted by Chief McNeil about a situation involving an individual with autism who had contact with some Aberdeen police officers. *Id.* The contact led to the disablement of the individual's truck. *Id.* According to Lunzman, this "essentially" destroyed the individual's truck "that was a prize possession to the individual." *Id.* Lunzman also claimed that he was not asked for assistance until after the vehicle was already destroyed. *Id.* Shortly thereafter, the individual committed suicide. *Id.*

During a meeting on May 20, 2025, the commission rejected a request from Chief Deputy Lemke that the county deputies receive "promotions to Senior Deputy increased pay, as few Deputies have reached Senior Deputy Status." *Id.* Lunzman was not present at the meeting due to a conflict. *Id.* Lunzman believes the commission had previously voted to approve other promotions for senior positions. *Id.*

On June 23, 2025, at a meeting of the Communication Council Stakeholders, Chief McNeil "convinced Council to pay for SIM Cards by 911 Dispatch[.]" *Id.* According to Lunzman, this was not a proper use of 911 funds.

*Id.* He was not at the meeting due to a medical appointment, but he did notify the Council of his position by letter. *Id.* The Council "chose to address it in the future and continue allowing the SIM Cards to be paid through 911 funds." *Id.*

In late July 2025, the South Dakota Highway Patrol performed an unannounced saturation in the area of a crime scene. *Id.* Lunzman talked with both the Highway Patrol and Chief McNeil about the lack of communication and how it interfered with the crime scene investigation. *Id.* The Highway Patrol "acknowledged the mistake and agreed it would not happen again." *Id.* Chief McNeil denied interfering with the case but "admitted having a Detective talk to one of the victims and receiving evidence." *Id.* Chief McNeil "stated a meeting should be held to address concerns." *Id.*

On August 1, 2025, Lunzman and Chief McNeil did have a meeting where they discussed concerns. *Id.* Lunzman "outlined a procedure which was going to be followed if the numbers in the jail continued to grow and the jail was full and unable to take any more arrestees." *Id.* Chief McNeil "was not happy with the possibility of the procedure." *Id.* at 18.

On August 13, 2025, Brown County Sheriff's Office Investigator Wes Graff informed Lunzman that Chief McNeil held a meeting with the State Attorney's Office, the Groton Police Department, the South Dakota Highway Patrol, and the Aberdeen Police Department. *Id.* Lunzman was not included. *Id.*

On August 21, 2025, Lunzman contacted Chief McNeil to apologize for a Brown County Corrections officer "refusing to take an arrestee over the weekend." *Id.*

On October 7, 2025, Tunheim talked with the commission about some correctional officers "who qualified for Senior Status at the [Brown County Sheriff's Office] which then provides an increase in pay." *Id.* Lunzman contends that ""even though [he] was not asking for a budget supplement for the promotions[,]" the commission told Tunheim to renew the request in December, and it may be considered in the 2026 budget. *Id.*

In his prayer for relief Lunzman seeks the following: "[e]njoin Defendants from interfering with jail operations or Sheriff authority[,]" "[c]ompensatory damages for emotional distress, pain and suffering, reputational harm, and other non-economic injuries sustained as a result of Defendants' unlawful conduct[,]" "[b]ack pay and front pay for raise and Coroner Duties, as appropriate[,]" "[p]unitive damages against the Defendants for their complete disregard, willful, malicious, and reckless conduct[,]" "[d]eclaratory judgment that Defendants' actions violated [Lunzman's] rights under the U.S. Constitution and Federal and State Law[,]" "[i]njunctive relief, including an order requiring Defendants to take affirmative steps to prevent future discrimination and retaliation within the Brown County Offices[,]" "[p]rejudgment and post-judgment interest[,]" "[a]ttorneys' fees and costs[,]" and "[a]ny other relief this Court deems just and proper." *Id.* at 29.

The City Defendants and the County Defendants acknowledge that pro se complaints must be construed liberally, that the Court accepts the factual allegations in the complaint as true, and that reasonable inferences are drawn in Lunzman's favor. Docket 11 at 6; Docket 14 at 3–4. However, they maintain

that dismissal is appropriate under Rule 12(b)(6) because Lunzman has failed to state any claim for relief that is plausible on its face.[9] *See id.* In response, Lunzman, relying particularly on his pro se status, contends he has pled sufficient facts to support his claims, and therefore, dismissal under Rule 12(b)(6) is unwarranted.

**LEGAL STANDARD**

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Sworr v. DeJoy*, No. 4:24-CV-04075-RAL, 2025 WL 1249566, at *1 (D.S.D. Apr. 30, 2025) (quoting Fed. R. Civ. P. 8(a)(2)). "Courts must accept the plaintiff's factual allegations as true but need not accept the plaintiff's legal conclusions." *Id.* (citing *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768–69 (8th Cir. 2012)). "Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to 'state a claim to relief that is plausible on its face[,] meaning the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Consequently, "[t]he factual allegations must be sufficient to 'raise a right to relief above the speculative level.'" *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020)

---

[9] The City Defendants also move to dismiss under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. Because of the Court's ruling on the motion to dismiss under Rule 12(b)(6) is dispositive, the Court need not address this additional argument.

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pro se complaints are to be construed liberally, but "they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

## DISCUSSION

### I. Lunzman's allegations of conflict of interest

Lunzman filed a "Correspondence to the Court" at Docket 24-1, raising concerns that "his case has been unduly prejudiced by the Defendant's Council, Marso" because she has represented elected officials including Lunzman, "communicated frequently to Human Resources Director [] regarding [Lunzman's employees[,]" and she "is currently representing [Lunzman] involving an ongoing EEOC complaint." Docket 24-1 at 2. Lunzman also believes Marso has a conflict of interest because she has provided consultation to him in the past regarding named defendants in this lawsuit and provided advice regarding other employees and his wife, who also had a lawsuit pending against Brown County. *Id.*

Marso provided a response, Docket 25, thoroughly addressing Lunzman's allegations, her work for the County Defendants, as well as work provided by her colleagues at the Boyce Law Firm. The Court has reviewed Marso's attestation and the South Dakota Rules of Professional Conduct and finds no current conflict of interest exists that would warrant Marso and Boyce Law Firm's withdrawal from this case.

## II. Lunzman has no standing to bring claims on behalf of his wife, Mary Jane Lunzman

In his complaint, Lunzman includes allegations concerning how his wife was treated by the Defendants. Docket 1 at 20-21. Specifically, Count III of his complaint alleges "[d]isparate treatment of [Mary Jane] Lunzman compared with other employees who received accommodations or were disciplined privately." *Id.* at 20. Count IV alleges that Mary Jane Lunzman "experienced a work injury that resulted in medical limitations (including paralysis symptoms) and requested/received limited accommodations[.]" *Id.* at 21. Count V alleges "[r]epeated exclusionary treatment of [Mary Jane Lunzman]" and that Mary Jane Lunzman was "subjected to hostile environment and retaliation[.]" *Id.* Count X asserts "[d]isclosure of [Mary Jane Lunzman's] disability status (e.g. accommodations) in open session[.]" *Id.* at 26.

But Lunzman lacks standing to bring claims on his wife's behalf. *See Robinson v. Donahoe*, 957 F. Supp. 2d 1119, 1128 (D.S.D. 2013) ("Standing . . . requires 'a showing of injury in fact to the plaintiff that is fairly traceable to the challenged action of the defendant, and likely to be redressed by a favorable decision.'" (quoting *Braden v. Wal–Mart Stores*, Inc., 588 F.3d 585, 591 (8th Cir. 2009)). Therefore, any claims Lunzman has brought or is attempting to bring on behalf of anyone other than himself are not properly before the Court in this case.

## III. Motions to Dismiss by the City Defendants and the County Defendants (Dockets 10 and 13)

Lunzman brings all thirteen causes of action against the City Defendants, *see generally* Docket 1, and the County Defendants, *Id.*

### A. Counts I and II – § 1983 Claims

Under Title 42, § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Dunn v. Penfield*, No. 5:23-CV-05025-KES, 2024 WL 1723705, at *9 (D.S.D. Jan. 22, 2024) (quoting 42 U.S.C. § 1983). "[S]ection 1983 does not establish any substantive rights." *Id.* (quoting *Henley v. Brown*, 686 F.3d 634, 640 (8th Cir. 2012)). Instead, it "serves as a vehicle for 'vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.'" *Henley*, 686 F.3d at 640 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Thus, "an underlying constitutional or statutory violation is a predicate to liability under section 1983." *Id.*

"To state a claim under § 1983, a plaintiff must establish two elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed by a person acting under the color of state law." *Forman v. Brookings Police Dep't*, No. 4:22-CV-04034-KES, 2023 WL 3766633, at *4 (D.S.D. Mar. 24, 2023) (citing *West v. Atkins*,

487 U.S. 42, 48 (1988)). County and municipal employees, like the Defendants here, may be sued under § 1983 in their individual capacities, their official capacities, or both. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).

**1. Official capacity claims**

In his complaint, Lunzman brings official capacity claims against all of the named defendants. Docket 1 at 18. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Therefore, Lunzman's claims against Chief McNeil in his official capacity are, in effect, against the City of Aberdeen, and his official capacity claims against Sutton, Gage, Dennert, Fjeldheim, Dinger, Winter-Goodman, and Tunheim are effectively against Brown County.

But a municipal or local government may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). And here, Lunzman's complaint contains no facts that would support a claim that any policy or custom by Brown County or the City of Aberdeen has deprived him of a federal right. Therefore, Lunzman's claims against Chief McNeil, Sutton, Gage, Dennert, Fjeldheim, Dinger, Winter-Goodman, and Tunheim in their official capacities fail. For these same reasons, Lunzman's § 1983 claims against Brown County and the City of Aberdeen fail. Finally,

because the Aberdeen Police Department is not a suable entity, his § 1983 claims against that department are futile. *See Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (upholding dismissal of pro se § 1983 claims against "[t]he West Memphis Police Department and West Memphis Paramedic Services" because they "are simply departments or subdivisions of the City government" and "not juridical entities suable as such").

**2. Individual capacity claims**

Lunzman also asserts individual capacity claims against Chief McNeil, Sutton, Gage, Dennert, Fjeldheim, Dinger, Winter-Goodman, and Tunheim, and Lunzman seeks both monetary damages and injunctive relief.

**a. Individual capacity claims for injunctive relief**

As a preliminary matter, Lunzman's request for injunctive relief against Chief McNeil, Sutton, Gage, Dennert, Fjeldheim, Dinger, Winter-Goodman, and Tunheim in their individual capacities fails. "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011); *see also Cmty. Mental Health Servs. v. Mental Health & Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005) ("Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.*, his official capacity."). Therefore, Lunzman's request for injunctive relief against these defendants in their individual capacities is dismissed.

**b. Individual capacity claims for monetary relief**

Qualified immunity is a defense available to government officials sued in their individual capacities for monetary relief. *Dundon v. Kirchmeier*, 85 F.4th 1250, 1255 (8th Cir. 2023) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In a § 1983 action, an officer is entitled to qualified immunity unless: (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established." *Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 620 (8th Cir. 2023). "A necessary precursor to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted, is the determination of whether the plaintiff has asserted a violation of a constitutional right *at all*." *Johnson*, 172 F.3d at 536 (emphasis in original). Here, Lunzman attempts to bring his individual capacity claims for monetary damages under § 1983 for First Amendment retaliation (Count I), Fourteenth Amendment procedural due process (Count II), Fourteenth Amendment equal protection (Count III), and deprivation of rights under color of state law (Count XII). Each claim is addressed separately.

**i. Count I - First Amendment Retaliation**

"To allege a First Amendment retaliation claim, a plaintiff must 'show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.'" *Ward v. United States Marshals*, No. 5:23-CV-05061-CCT, 2025 WL 949242, at *20 (D.S.D. Mar. 28, 2025)

(quoting *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013)). "[T]he plaintiff must show the official took the adverse action because the plaintiff engaged in the protected [activity]." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).

First, the Court notes that Lunzman is not employed by the City of Aberdeen, its police department, Brown County, or the Brown County Commission. Instead, he is an elected official, serving as the Brown County Sheriff. Docket 1 at 3. In his role as Sheriff, he interacts with the Aberdeen Police Chief, and it is clear from the record that Lunzman and Chief McNeil do not always agree about how things should be handled. The record also discloses that during his tenure as Sheriff, Lunzman has worked continuously to effect change and manage his department. He has raised issues with the Brown County Commission, and it has advised him when it has concerns about the Brown County Sheriff's Department. Those types of interactions are appropriate by and expected of public officials.

Second, while Lunzman did not receive the raise he wanted in 2025, a denial of a raise does not constitute an adverse action. *See Turner v. Gonzales*, 421 F.3d 688, 696 (8th Cir. 2005) (explaining that the "decision not to raise . . . salary [is] not an adverse employment action [where] . . . salary [is] not decreased or otherwise diminished in any way" (alterations in original) (citation omitted)). Moreover, receiving negative feedback or constructive criticism from the County Commission does not constitute an adverse action. *See Grooms v. Privette*, 127 F.4th 730, 734 (8th Cir. 2025) (noting that the Court was "wary of

treating one public official's allegations against another public official as discrimination or retaliation without more") (citing *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000)). However, even if the alleged conduct constitutes an adverse action, Lunzman has not plausibly alleged any action taken against him by the Commission that would chill a person of ordinary firmness from continuing to raise issues within his role as Sheriff or speak at Commission meetings. *See Rinne v. Camden Cnty.*, 65 F.4th 378, 384 (8th Cir. 2023) (finding that banning plaintiff from "entering county property is a concrete consequence that would objectively chill a person of ordinary firmness from criticizing county commissioners").

Third, Lunzman's remaining allegations supporting his retaliation claim all appear to be in relation to his official duties. For example, he asserts that he "engaged in constitutionally protected speech and petitioning on matters of public concern, including but not limited to: Jail operations and Safety; training and medical practices, misuse of media and leaks; open meetings compliance; chain-of-command; and interagency issues[.]" Docket 1 at 18. He also referenced "[r]eporting misconduct, leaks and mismanagement internally and publicly[,]" communicating "regarding unlawful interference and mismanagement[,]" and "[s]peaking publicly and internally on matters of public concern relating to misuse of governmental authority and violation of statutory duties." *Id.*

"A public employee's speech is protected under the First Amendment if he spoke as a citizen on a matter of public concern, but a public employee's

speech is not protected if he spoke pursuant to his official duties." *Mogard v. City of Milbank*, 932 F.3d 1184, 1189 (8th Cir. 2019) (quoting *Groenewold v. Kelley*, 888 F.3d 365, 371 (8th Cir. 2018)). "When public employees speak on matters of public concern pursuant to their official duties, 'the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.'" *Id.* (citation omitted). Lunzman is an elected public official, and the issues on which he claims he spoke are matters of public concern related to his official job duties.

In conclusion, even accepting Lunzman's facts as true, he has failed to state a claim for First Amendment Retaliation under § 1983. Therefore, dismissal of his § 1983 individual capacity claims is warranted.

**ii. Count II – Fourteenth Amendment Procedural Due Process**

In Count II, Lunzman makes allegations related to leaks of "confidential personnel data" and "stigmatizing accusations" regarding both Lunzman and Mary Jane Lunzman that were published in local news sources. Docket 1 at 19. Lunzman characterizes his claims as "name-clearing" and "stigma-plus." *Id.* He claims that he and his wife were deprived of timely written notices and investigative materials, and were not given a fair opportunity to be heard "to clear their names in accordance of the Brown County Policy Manual." *Id.*

"Defaming a governmental employee's reputation, good name, honor, or integrity in connection with terminating the employee, without giving the employee a name-clearing hearing, is a deprivation of the employee's

constitutionally protected liberty interest." *Brown v. Simmons*, 478 F.3d 922, 923 (8th Cir. 2007) (citing *inskowski v. City of Stephen,* 442 F.3d 1107, 1109–10 (8th Cir. 2006)). "To state a 'stigma plus' claim, the employee must allege: (1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public, and (4) an alteration or extinguishment of a right or legal status[.]" *Id.* (internal citations omitted).

Again, Lunzman is not an employee of any of the defendants. Also, on the record before the Court, he has not been terminated from his position as the Brown County Sheriff. And while he alleges that someone leaked information about him and his wife to local news organizations without a name-clearing hearing, he does not specify the source of the leaks. Thus, he has not established a stigma-plus, Fourteenth Amendment due process claim and Count II in that regard is dismissed.

**iii. Count III – Fourteenth Amendment Equal Protection**

The Equal Protection Clause of "[t]he Fourteenth Amendment requires that the government 'treat similarly situated people alike[.]'" *Murphy v. Missouri Dep't of Corrs.*, 372 F.3d 979, 984 (8th Cir. 2004) (quoting *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999)). For a plaintiff to prevail on an equal protection claim, he "must show that he was treated differently than other persons who were 'in all relevant respects similarly situated.'" *Flowers v. City of Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009) (citation omitted).

In Count III, Lunzman alleges that the "Defendants selectively enforced policies and imposed a typical [sic] burdens against plaintiff while treating similarly situated officials/employees (Scott Bader) more favorably despite comparable or more serious conduct[.]" *Id.* at 20. It is not clear what or whose policies Lunzman is referring to, and there is nothing in the record identifying Scott Bader or his role.

While the Constitution prohibits selective enforcement of the law based on considerations such as ethnicity, race, and other unjustifiable factors, "[t]o prevail on an equal protection claim of selective enforcement, a plaintiff 'must show both that the enforcement had a discriminatory effect, and that the enforcement was motivated by a discriminatory purpose.'" *Saunders v. Thies*, 38 F.4th 701, 714 (8th Cir. 2022) (citation omitted); *Johnson v. Crooks*, 326 F.3d 995, 999 (8th Cir. 2003) (considering selective enforcement based on race); *Jewish Home of E. PA v. Ctrs. for Medicare & Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) (explaining that to establish selective enforcement claim, plaintiff must show "that selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right" (citation omitted)).

Lunzman has failed to show either that the enforcement had a discriminatory effect or that the enforcement was motivated by a discriminatory purpose, and it is not for the Court to determine what he is claiming. *See Stone*, 364 F.3d at 913–14 (8th Cir. 2004) ("Though pro se complaints are to be construed liberally, *see Estelle v. Gamble,* 429 U.S. 97, 106, (1976), they still

must allege sufficient facts to support the claims advanced."). Further, although Lunzman raises the issues of "denial of promotion and raise tied to political animus" and "Commissioner's statements singling out plaintiff and spouse during public video,]" *see id.*, Lunzman is an elected official, so he is not eligible or entitled to any promotion, and his salary is set by South Dakota statute. *See* SDCL ch.12-1; SDCL § 7-12-15.

As an additional basis for dismissal, the County Defendants assert that Lunzman "has not sufficiently pled a property interest, deprivation of procedural rights, or differential treatment." Docket 14 at 7. The Court agrees, and as such, Lunzman has failed to state an equal protection deprivation of property or deprivation of rights claim. But the Court must also consider whether Lunzman has pled a class-of-one equal protection claim.

The Supreme Court recognized a class-of-one equal protection claim in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). The Eighth Circuit applied the class-of-one analysis in *Robbins v. Becker*, holding that the threshold inquiry in the class-of-one equal protection claim is whether the plaintiff is similarly situated to others who allegedly received preferential treatment. 794 F.3d 988, 995 (8th Cir. 2015) (quoting *Domina v. Van Pelt*, 235 F.3d 1091, 1099 (8th Cir. 2000)). Absent such a threshold showing, a plaintiff does not have a viable equal protection claim. *Id.* (quoting *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir.1994)). "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff

in all material respects." *Id.* (quoting *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)).

Lunzman has failed to state a class-of-one equal protection claim. He has not established that any others, similarly situated to him, received preferential treatment. He also does not claim that anyone else is identical or directly comparable to him in all material respects. Thus, his Fourteenth Amendment, equal protection claim as alleged in Count III is dismissed.

**iv. Count IV – Americans with Disabilities Act (ADA)**

The Americans with Disabilities Act (ADA) "makes it unlawful for a covered employer to discriminate against any 'qualified individual on the basis of disability.'" *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013) (quoting 42 U.S.C. § 12112(a)). "To establish discrimination under the ADA, an employee must show that he (1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of his disability." *Id.* "The ADA defines disability as '(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]'" *Kale v. Aero Simulation Inc.*, No. 5:22-CV-05081-KES, 2023 WL 6255013, at *2 (D.S.D. Sept. 26, 2023) (quoting 42 U.S.C. § 12102(1)).

The County Defendants assert that Lunzman, as an elected official, has not established that he is considered an employee protected under the ADA. Docket 14 at 4-5. While the authority provided by the County Defendants

supports their position, it is not controlling, and the plain statutory language of the ADA is silent about whether it applies to elected officials. Also, neither the Supreme Court, nor the Eighth Circuit have opined on whether an elected county official is considered an employee under the ADA. Nevertheless, this Court need not determine whether the ADA applies to Lunzman, as Lunzman's ADA claim fails on other fronts.

In Count IV, Lunzman does not claim that he is disabled; instead, he claims that his wife, Mary Jane Lunzman, has a disability and was retaliated against for protected activity related to her injury, leave, and worker's compensation. Docket 1 at 21. As noted above, those claims have been dismissed because he does not have standing to raise any claims on Mary Jane Lunzman's behalf.

The Court recognizes that the law provides that "non-disabled individuals have standing to bring claims when they are injured because of their association with a disabled person." *Durand v. Fairview Health Servs.*, 902 F.3d 836, 843–44 (8th Cir. 2018) (citations omitted). But Lunzman has not alleged that he suffered any injury due to Mary Jane Lunzman's alleged disability or accommodations. Instead, his alleged injury is not receiving a raise because he had hired Mary Jane Lunzman. Docket 1 at 14. Because his ADA claim hinges on allegations not related to Mary Jane Lunzman's disability, Lunzman not plausibly pled an ADA claim.

Finally, even if he had sufficiently pled an ADA claim, the record does not show that Lunzman exhausted his administrative remedies as required to

assert a claim under the ADA. "To assert an ADA . . . claim, [a plaintiff] must have first exhausted his administrative remedies by filing a charge of discrimination with the EEOC[.]" *Kale v. Aero Simulation, Inc.*, 139 F.4th 684, 689 (8th Cir. 2025) (quoting *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 919 (8th Cir. 2018)). For all of these reasons, Lunzman has failed to state an ADA claim, and Count IV is dismissed.

**v. Count V – Title VII**

"Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Walker v. MG Oil Co.*, No. 5:25-CV-05029-RAL, 2025 WL 3496791, at *7 (D.S.D. Dec. 5, 2025) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024)). The employer is the only appropriate defendant in a Title VII claim. *Bales v. Wal-Mart Stores, Inc.*, 143 F.3d 1103, 1111 (8th Cir. 1998).

"Exhaustion of administrative remedies is central to Title VII's statutory scheme." *Zarn v. Minnesota Dep't of Hum. Servs.*, 165 F.4th 1143, 1149 (8th Cir. 2026) (citation omitted). Therefore, "[b]efore filing a lawsuit in federal court, 'a plaintiff must 'provide[ ] the EEOC the first opportunity to investigate discriminatory practices and enable[ ] it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts.'" *Id.* (alterations in original) (quoting *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 898 (8th Cir. 2024)). "To do so, 'an individual must: (1) timely file a charge of

discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue.'" *Id.* (quoting *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222, (8th Cir. 1994)).

In Count V, Lunzman alleges hostile work environment and retaliation under Title VII related to allegations that he and Mary Jane Lunzman were subjected to "inappropriate comments, exclusion, and differential treatment after protected activity (complaints regarding harassment/discrimination and policy violations)." Docket 1 at 21. He claims that the "Defendants failed to take prompt, effective remedial action." *Id.*

The County Defendants again assert that Lunzman, as an elected official, has not established that he is considered an employee under Title VII. Docket 14 at 4-5, 9. Here, their argument fares better than it did above, as Title VII specifically excludes elected officials from its definition of employees. *See Goodwin v. Cir. Ct. of St. Louis Cnty., Mo.*, 729 F.2d 541, 548 (8th Cir. 1984) ("Title 42 U.S.C. § 2000e(f) defines 'employee' in pertinent part as follows: The term 'employee' means an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof[.]"). As Lunzman is an elected official under South Dakota law, he is not eligible to bring a Title VII claim.

His claim also fails because there is no indication he exhausted his administrative remedies. Further, he has not established any direct discrimination or provided plausible support for the reduced prima facie

requirements arising under *McDonnell Douglas*. *See Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796-97 (8th Cir. 2021) (citation omitted). When, as here, there is an absence of direct discrimination, a plaintiff can establish a prima facie case of sex discrimination by showing that "(1) [he] was a member of the protected group; (2) [he] was qualified to perform the job; (3) [he] suffered an adverse employment action; and (4) circumstances permit an inference of [sex] discrimination." *Deyo v. Sec. First Bank*, No. 5:23-CV-05012-KES, 2025 WL 775792, at *5 (D.S.D. Mar. 11, 2025) (fourth alteration in original) (quoting *Bell v. Baptist Health*, 60 F.4th 1198, 1203 (8th Cir. 2023)). It is not clear what protected group Lunzman believes he belongs to. *See Beavers v. Lockhart*, 755 F.2d 657, 663–64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations). But even so the Court is not convinced he has suffered an adverse employment action, and there is no inference of discrimination based on sex.

Regarding the hostile work environment claim, he has not shown that any alleged harassment he suffered had a causal nexus to any alleged protected group status. *See Warmington*, 998 F.3d at 799 (A prima facie case for hostile work environment requires the plaintiff show that "(1) [he] belongs to a protected group; (2) [he] was subject to unwelcome harassment; (3) a casual nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) [his] employer knew or should have known of the harassment and failed to take

proper action."). For all of these reasons, Lunzman has failed to state a Title VII claim, and Count V is dismissed.

**vi. Count VI – Monell Liability**

In Count VI, Lunzman brings a claim for "Monell liability," generally claiming "constitutional deprivations were caused by municipal policies, customs or practices, including policymaker acts and ratification by . . . Chief of Police (City) concerning media disclosures, due process denials, retaliation, and interference with sheriff's authority." Docket 1 at 22. However, a municipal or local government may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). And "neither municipal nor supervisory liability may attach in section 1983 actions unless individual liability is first found on an underlying substantive claim." *Schoettle v. Jefferson Cnty.*, 788 F.3d 855, 861–62 (8th Cir. 2015) (quoting *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011)).

Lunzman's complaint does not establish that any of the Defendants violated his constitutional rights, nor has he shown that any of the Defendants have a policy or custom that deprived him of a federal right. Therefore, he cannot maintain this action against the Defendants. *See Davenport v. City of Little Rock*, 142 F.4th 1036, 1044 (8th Cir. 2025) ("[A]bsent a constitutional violation by a city employee, there can be no § 1983 or *Monell* liability for the City." (alteration in original) (quoting *Whitney v. City of St. Louis*, 887 F.3d 857,

861 (8th Cir. 2018)); *see also Jones v. Faulkner Cnty., Arkansas*, 131 F.4th 869, 876 (8th Cir. 2025) (same for county). Because Lunzman failed to establish any violation of his constitutional rights, there is no basis for *Monell* liability, and Count VI is dismissed.

### vii. Count XII – Conspiracy to Deprive Rights

In Count XII of his complaint, Lunzman alleges violation of 18 U.S.C. § 241. Docket 1 at 28. Section 241 criminalizes a conspiracy to violate civil rights. "But the Eighth Circuit has indicated that such criminal statutes do not provide a private right of action." *Richmond v. Wiese*, No. 4:25 CV-04217-ECS, 2026 WL 381279, at *2 (D.S.D. Feb. 11, 2026) (quoting *United States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998) ("Courts repeatedly have held that there is no private right of action under § 241, even though the statute allows federal authorities to pursue criminal charges)); *see also Thornsberry v. Barden*, 854 F. App'x 105, 106 (8th Cir. 2021) (per curiam) (citing *Wadena*, 152 F.3d at 846 (holding that there is no private cause of action under § 241")). Accordingly, Lunzman's claim for conspiracy to deprive rights under § 241 is dismissed.

As a result of the above, each of Lunzman's federal claims has now been dismissed, and all that remains are Lunzman's state law claims. Under 28 U.S.C. § 1367(a), this Court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). The Court notes that it may decline to exercise supplemental

jurisdiction if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). However, it nevertheless addresses the Defendants' motion to dismiss Lunzman's state law claims.

### viii. Count VII – State law claims (invasion of privacy, defamation, false light)

In Count VII, Lunzman alleges state law claims for invasion of privacy, defamation, and false light. Docket 1 at 22. He claims that defendants "made and published false statements suggesting corruption, impairment, and abandonment of duties." *Id.* He also alleges "media leaks and defamatory headlines." *Id.*

"To recover for invasion of the right to privacy, a party must prove an 'unreasonable, unwarranted, serious and offensive intrusion upon the seclusion of another.'" *Gantvoort v. Ranschau*, 973 N.W.2d 225, 233 (S.D. 2022) (quoting *Kjerstad v. Ravellette Publ'ns, Inc.*, 517 N.W.2d 419, 424 (S.D. 1994)). "[T]he invasion must be one which would be offensive and objectionable to a reasonable man of ordinary sensibilities." *Id.* (alteration in original) (quoting *Roth v. Farner-Bocken Co.*, 667 N.W.2d 651, 660–61 (S.D. 2003)). It appears that Lunzman's invasion of privacy claim is tied to the news stories published about his spouse's employment. But he has not indicated who he believes is the source of the leaks to the news sources or shown how his privacy has been invaded. Thus, Lunzman has not alleged conduct that establishes an invasion of privacy claim.

Under South Dakota law, defamation includes both libel and slander, which require false and unprivileged communications. SDCL §§ 20-11-2, -3, -4. "If a communication is 'privileged,' it is not actionable." *Hernandez v. Avera Queen of Peace Hosp.*, 886 N.W.2d 338, 348 (S.D. 2016) (quoting *Kieser v. Se. Props.,* 566 N.W.2d 833, 837 (S.D. 1997). *See also Koch v. Tracy*, No. 4:15-CV-04102-KES, 2016 WL 3817214, at *4 (D.S.D. July 12, 2016) ("[A] defamation action may not survive if the alleged defamatory communication was privileged." (citation omitted).

Under SDCL § 20-11-5(3) a privileged communication is one made:

> (1) In the proper discharge of an official duty;
> (2) In any legislative or judicial proceeding, or in any other official proceeding authorized by law;
> (3) In a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information;
> (4) By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding or of anything said in the course thereof.

SDCL § 20-11 5(3). Lunzman's defamation claim appears to rest on his allegations of "Commissioners' public statements misrepresenting [Mary Jane Lunzman's] role and Plaintiff's decisions" and the "commissions [sic] refusal to correct its minutes to state that plaintiff completed, rather than resigned from, his term constitutes publication of a false statement made with actual malice." Docket 1 at 23. However, the statements made by the commissioners are entitled to absolute privilege, as they were made in the proper discharge of an

official duty and are part of an official proceeding authorized by law. *See* S.D.C.L § 7-8-20 (general powers of county commissioners); *see also Koch v. Tracy*, No. 4:15-CV-04102-KES, 2016 WL 3817214, at *6 (D.S.D. July 12, 2016) (finding absolute privilege where defendant was an officer and public official who communicated in that capacity). Further, there is no indication the commissioners' statements were made with malice, but even if they had been, the privilege applies. *Id.* (providing that "whether an absolute privilege applies does not depend on the truth or falsity of the communication" (quoting *Pawlovich v. Linke,* 688 N.W.2d 218, 221 (S.D. 2005)). Lunzman's complaint fails to state a cause of action for invasion of privacy or defamation and false light under South Dakota law.

**ix. Count VIII – State law claims (intentional interference with official duties, injurious falsehood)**

In Count VIII, Lunzman alleges "intentional interference with official duties/injurious falsehood" under South Dakota law. Docket 1 at 23. In support, he asserts that the "Defendants knowingly exceeded and interfered with Sheriff's operations and authority[,]" and "made false statements and directives intended to undermine Plaintiff's lawful authority, causing operational disruption and damages." *Id.* However, the authority Lunzman cites do not support that a private cause of action for intentional interference with official duties exists under South Dakota law. "[I]t is not this [C]ourt's job to research the law to support [his] argument." *Molasky v. Principal Mut. Life Ins.*

*Co.*, 149 F.3d 881, 885 (8th Cir. 1998). Therefore, Lunzman has failed to state a claim upon which relief can be granted, and Count VIII is dismissed.

**x. Count IX – State law claim (intentional infliction of emotional distress)**

Lunzman alleges intentional infliction of emotional distress in Count IX of his complaint. "Under South Dakota law, a plaintiff alleging intentional infliction of emotional distress must show four elements: '(1) extreme and outrageous conduct by the defendant; (2) that the defendant intended to cause severe emotional distress; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress must result.'" *Wade v. Sanford Med. Ctr.*, No. 3:16 CV-03034-RAL, 2018 WL 3825904, at *21 (D.S.D. Aug. 10, 2018) (quoting *Stratmeyer v. Engberg*, 649 N.W.2d 921, 926 (S.D. 2002)). "Plaintiffs attempting to demonstrate that a defendant's conduct was extreme and outrageous face a high threshold." *Id.* (citing *Harris v. Jefferson Partners, L.P.*, 653 N.W.2d 496, 500 (S.D. 2002) ("Proof under this tort must exceed a rigorous benchmark.")). "The conduct necessary to form intentional infliction of emotional distress must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community.'" *Fix v. First State Bank of Roscoe*, 807 N.W.2d 612, 618 (S.D. 2011) (quoting *Richardson v. E. River Elec. Power Co-op., Inc.*, 531 N.W.2d 23, 27 (S.D. 1995)). The conduct must be of a nature that is "calculated to cause," and which actually causes, extremely serious mental distress. *Citibank*

*(S.D.), N.A. v. Hauff*, 668 N.W.2d 528, 535 (S.D. 2003) (quoting *Richardson*, 531 N.W.2d at 27). Whether a defendant's conduct is extreme and outrageous enough to permit recovery is initially a question for the court. *Fix*, 807 N.W.2d at 618; *Richardson*, 531 N.W.2d at 27. Only "[w]here reasonable men may differ, [is it] for the jury . . . to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Richardson*, 531 N.W.2d at 27 (quoting Restatement (Second) of Torts § 46 cmt. h (1965)).

Lunzman alleges the "Defendants extreme and outrageous conduct – including publicized leaks and the lack of States Attorney investigating said leaks, stigmatizing narratives, and deliberative interference with lawful authority – was intentional or reckless and caused severe emotional distress" and that the Brown County Commissioners and Winter-Goodwin "conducted a noncompliant Investigation against my spouse [Mary Jane Lunzman] and [Lunzman] later found out it was against [him]." Docket 1 at 25. Even accepting Lunzman's allegations as true, this conduct does not meet the "rigorous benchmark" of going beyond "all possible bounds of decency, and be regarded as . . . utterly intolerable in a civilized community." *See Harris*, 653 N.W.2d at 500. Therefore, Lunzman's claim for intentional infliction of emotional distress in Count IX is dismissed.

**xi. Count X – State law claim (open meeting law violations)**

Lunzman's Count X alleges violation of open meeting laws, asserting that the "Defendants publicly discussed personnel matters and leveraged those discussions to drive adverse actions and/or conducting decision making without lawful notice and proper agenda practices." Docket 1 at 26. There is no private cause of action for violation of an open meeting law violation; however, South Dakota law provides a mechanism to send a complaint to the South Dakota Open Meetings Commission for further action pursuant to SDCL § 1-25-6. And SDCL § 1-25-1 provides for enforcement through a criminal penalty of a Class 2 Misdemeanor. Accordingly, this Court is not the proper forum to redress this claim, and Lunzman's claim for open meeting law violations under Count X is dismissed for failure to state a claim.

**xii. Count XI – State law claim (wrongful termination)**

In Count XI of his complaint, Lunzman alleges wrongful termination under South Dakota law. Docket 1 at 27-28. Lunzman has not been terminated from employment, and it appears this claim relates to Mary Jane Lunzman. As he cannot bring claims on her behalf, this claim is dismissed.

**xiii. Count XIII – State law claims (retaliation & negligent supervision)**

In Count XIII of his complaint, Lunzman alleges state law claims for retaliation and negligent supervision. Docket 1 at 28. Lunzman's state law retaliation claim fails for the same reasons his retaliation claim addressed above fails.

As it relates to a claim of negligent supervision, the South Dakota Supreme Court "has 'acknowledged that employers can be held responsible for

the negligent acts of their employees under a respondeat superior theory, and that negligent hiring and supervision of an employee may also give rise to liability.'" *Finkle v. Regency CSP Ventures Ltd. P'ship*, 27 F. Supp. 3d 996, 999 (D.S.D. 2014) (quoting *Rehm v. Lenz*, 547 N.W.2d 560, 566 (S.D. 1996)). "[N]egligent supervision [requires] that the employer failed to exercise reasonable care in supervising (managing, directing, or overseeing) its employees as to prevent harm to other employees or third persons." *Medina v. Botello*, 595 F. Supp. 3d 838, 849 (D.S.D. 2022) (alterations in original) (quoting *Total Auctions & Real Estate, LLC v. S.D. Dep't of Revenue & Reg.*, 888 N.W.2d 577, 582 (S.D. 2016)). "[A] negligent supervision claim requires that an employee commit an underlying tort." *Total Auctions*, 888 N.W.2d at 582 (citing *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 53 (Iowa 1999) ("[A]n employer cannot be held liable for negligent supervision . . . where the conduct that proper supervision and training would have avoided is not actionable against the employee.")).

Lunzman's complaint fails to allege facts suggesting that any of the named defendants were guilty of committing an underlying tort. Because he fails to state an actionable tort by any defendant, he also fails to state a claim against the employer defendants for negligent supervision. *See Schieffer v. Catholic Archdiocese of Omaha*, 508 N.W.2d 907, 913 (Neb. 1993) ("If there is no tort liability to the plaintiff against [the employee] individually, it follows that [the employer] cannot be held liable for his conduct.")). Therefore, Lunzman's negligent supervision claim is dismissed for failure to state a claim.

**ORDER**

Accordingly, it is hereby

ORDERED that the City Defendants' motion to dismiss (Docket 10) is granted; it is further

ORDERED that the County Defendants' motion to dismiss (Docket 13) is granted.

DATED September 29, 2026.

BY THE COURT:

CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE